CARDING SPECIALISTS (CANADA) LIMITED AND CROSROL, INC.
v. GUNTER & COOKE, INC.

No. 7614SC681

(Filed 2 March 1977)

1. Contracts § 16— contract not conditional on separate agreement

   The trial court correctly decided that defendant's obligations under the contract sued on were not conditional on the continuance of a separate licensing agreement between the parties.

2. Contracts § 29— breach — measure of damages

   Where the parties' contract provided that the $110,000 owed by defendant to plaintiffs was payable in goods, plaintiffs ordered 525 "card drives" from defendant, but defendant failed to ship any of the goods, plaintiffs' damages amounted to the fair market value of the number of units plaintiffs were entitled to at the time they were entitled to receive them, plus interest from that time.

APPEAL by plaintiffs and defendant from *Canaday, Judge.* Judgment entered 15 January 1976 in Superior Court, DURHAM County. Heard in the Court of Appeals 20 January 1977.

This is the third time that one or more of the parties have appealed from orders or judgments entered in this case. The

opinions filed in connection with the two earlier appeals are reported at 12 N.C. App. 448 and 25 N.C. App. 491. Much of the factual background and procedural history of this case is set out in those opinions.

Plaintiffs' claim arises under a contract executed 23 February 1968. In pertinent part the contract is as follows:

"1. Gunther & Cooke agrees to pay to Carding Canada as general damages for infringement of U. S. Letters Patent No. 3,003,195 the sum of $110,000, U. S. funds. The said sum shall be payable as provided in paragraph 3 hereof.

2. Carding Canada, Crosrol and any other company which is controlled by Andre Varga or his son or their personal representatives or any combination thereof (each of which is hereinafter referred to as a 'Carding Company') will be entitled to purchase from Gunther & Cooke and to sell any equipment which Gunther & Cooke manufactures and sells, except the GC 600-M System. Any Carding Company will be entitled to purchase such equipment, at the lowest mill price that applies to bulk sales in effect from time to time less a 10% O.E.M. discount. Such prices will be not less favourable to the purchaser than the prices of similar products which are available on the U. S. market.

3. Upon each purchase of equipment by a Carding Company from Gunther & Cooke under paragraph 2 hereof while all or any part of the said sum of $110,000 remains unpaid, the purchase price for such equipment shall be set off and applied against the balance of the said sum of $110,000 then owing. If a Carding Company other than Carding Canada is the purchaser, such company shall thereupon pay or credit to Carding Canada an amount equal to such purchase price.

\* \* \*

6. The right of purchase provided for in paragraph 2 hereof will continue until the said sum of $110,000 owing to Carding Canada under paragraph 1 hereof and all other amounts owing from time to time by Gunther & Cooke to Carding Canada have been paid and satisfied in full. In the event that the value of the purchases exceed the amount

owing by Gunther & Cooke to Carding Canada, normal cash terms shall be in effect unless otherwise agreed.

  7. Carding Canada hereby releases Gunther & Cooke from all liability and claims of any kind whatsoever arising from any infringement or alleged infringement by Gunther & Cooke of U. S. Letters Patent No. 3,003,195 and of any other patent or invention."

  The case was heard by the judge without a jury. Plaintiffs' evidence tended to show that on 22 October 1970, plaintiffs ordered 525 "card drives" from defendant with the purchase price to be credited against the $110,000 owed by defendant. Defendant failed to ship any of the goods. The judge concluded that defendant had breached the contract and awarded plaintiffs damages in the amount of $110,000 with interest from the date of the judgment. Plaintiffs and defendant appealed.

  *Smith, Moore, Smith, Schell & Hunter, by Beverly C. Moore and H. Miles Foy, for plaintiff appellees.*

  *Nye, Mitchell and Bugg, by R. Roy Mitchell, Jr., and John E. Bugg, for defendant appellant.*

  VAUGHN, Judge.

[1] In addition to the settlement agreement wherein defendant agreed to pay damages for patent ·infringement, the parties also entered into another agreement wherein defendant was granted a license to manufacture equipment supposedly covered by plaintiffs' patent and wherein defendant was to pay royalties for goods manufactured and sold under that license. Defendant contends that plaintiffs' threat to terminate the licensing agreement relieves it of its obligations under the contract sued on. We conclude that the trial judge correctly decided that defendant's obligations under the agreement sued on were not conditional on the continuance of the licensing agreement. Defendant also contends that it was impossible to fill such a large order as that placed by plaintiffs and that it was obviously placed in bad faith. The judge did not err in failing to reach those conclusions. The contract between the parties set out no specific time for delivery of the goods defendant was obligated to deliver. Defendant would have, therefore, had a reasonable time to make delivery on the order. The record makes it clear that defendant made no effort to fill the order.

**[2]** Plaintiffs and defendant have both appealed from the damages awarded. The judge concluded (1) plaintiffs were entitled to $110,000 for the breach; (2) plaintiffs were not entitled to interest from the breach; and (3) they were not entitled to recover $11,000 in profits allegedly lost in consequence of the breach. There is some merit in the arguments of all the parties and we reverse that part of the judgment relating to the amount of damages.

The contract provided that the $110,000 "shall be payable as provided in paragraph 3 hereof." The sum was, therefore, payable only in goods. In effect, goods were bartered for the release. Plaintiffs may or may not have been entitled to receive all of the 525 units it ordered. The number of units to which plaintiffs were entitled under the barter agreement should be computed by taking the lowest mill price per unit (applicable to bulk sales and less 10%) and dividing that price into $110,000. Plaintiffs' damages would then be the fair market value of the number of units to which they were entitled at the time they were entitled to receive them, plus interest from that time.

That part of the judgment fixing damages and interest is reversed and the case is remanded.

Reversed and remanded.

Judges HEDRICK and CLARK concur.